**IBETO PETROCHEMICAL INDUSTRIES LIMITED, Plaintiff–Counter–Defendant–Appellant,**

v.

**M/T BEFFEN, Her Engines, Tackle, Boiler, etc., in Rem, Defendant–Appellee,**

**Bryggen Shipping and Trading A/S, in Personam, Defendant–Counter–Claimant–Appellee.**

**Docket No. 05–6610 CV.**

United States Court of Appeals, Second Circuit.

Argued: June 21, 2006.

Decided: Jan. 17, 2007.

Keith B. Dalen, Hill, Rivkins & Hayden, New York, New York, for Plaintiff–Counter–Defendant–Appellant.

Garth S. Wolfson, Mahoney and Keane, LLP, New York, New York, for Defendant–Counter–Claimant–Appellee.

Before: MINER and CALABRESI, Circuit Judges, and RESTANI, Chief Judge, U.S. Court of Int'l Trade.*

MINER, Circuit Judge:

Plaintiff–Counter–Defendant–Appellant Ibeto Petrochemical Industries Limited ("Ibeto") appeals from an Order entered in the United States District Court for the Southern District of New York (Scheindlin, *J.*) in an action arising out of the contamination by seawater of a shipment of oil being carried by motor tanker. The Order granted the motions of Defendant–Appellee M/T Beffen, Her Engines, Tackles, Boiler, etc. (in rem) ("the Beffen") and Defendant–Counter–Claimant–Appellee Bryggen Shipping and Trading A/S (in personam) ("Bryggen") (collectively "defendants") to stay this action, to compel arbitration, and to enjoin an action pending in Nigeria. The Order also denied Ibeto's motion for voluntary dismissal and defendants' motion to limit Ibeto's recovery. For the reasons that follow, we dismiss the appeal in part. We affirm the Order in part and modify it in part.

## BACKGROUND

On February 6, 2004, the Motor Tanker Ship Beffen departed Paulsboro, New Jersey, carrying a cargo of base oil for delivery to Lagos, Nigeria. A Bill of Lading for the shipment issued on that date indicated that the shipper was Chemlube International, Inc. ("Chemlube") and that the cargo was destined for delivery to Ibeto in Lagos. The Bill of Lading incorporated the Charter Agreement between Chemlube and Bryggen for carriage of the shipment aboard the Beffen as follows: "This shipment is carried under and pursuant to the terms of the Charter Party dated 31 December 2003 between Chemlube International, Inc. as Charterer and Bryggen Shipping and Trading A/S as Owner and all conditions and exceptions whatsoever thereto." The Charter Party Fixture incorporated the provisions of two other documents—the standard form "Asba-

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

tankvoy" Tanker Charter Party and the "Chemlube Terms" dated September 2002.

The Asbatankvoy provisions included the following:

> Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration.

The Chemlube Terms included a provision for "arbitration to be in London, English law to apply."

The base oil shipment allegedly was contaminated with seawater when the Beffen arrived in the Port of Lagos on March 5, 2004. Ibeto, as receiver of the shipment, instituted an action against Bryggen and the Beffen in the Federal District Court of Nigeria on March 19, 2004. On a later visit to Nigeria, the Beffen was arrested by Ibeto. Security was posted for release of the vessel in the form of a bank guaranty issued by the Union Bank of Nigeria on July 8, 2004. It appears that, in December, 2004, Ibeto's claim for its loss was paid by the St. Paul Fire & Marine Insurance Company, which is now subrogated to the rights of Ibeto and is presently acting in the name of its subrogor. Settlement negotiations with the defendants thereaf-

ter were conducted. While negotiations were proceeding, according to Counsel for Ibeto, "out of an excess of caution and to protect the time for suit, arbitration was demanded in London and suit was commenced in New York."

The London arbitration demand was made by Clyde & Co. on behalf of Ibeto in a facsimile transmission to Bryggen dated March 4, 2005. The demand nominated an arbitrator and included the following language:

> We now call upon you to join in the appointment of a sole arbitrator in respect of all and any claims arising under the above Bills of Lading in accordance with the reference to "arbitration to be in London" at clause 23 of the Chemlube Terms dated September 2002 which form part of the Charter Party/Fixture Note dated 31st December 2003 which, in turn, is incorporated into the Bills of Lading contracts.

The action giving rise to this appeal was commenced in the United States District Court for the Southern District of New York by the filing of a Complaint on March 4, 2005. According to the Complaint, the action was brought as "an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure" to recover damages sustained by Ibeto in the sum of $2,000.000. An amended answer, filed by defendants on August 10, 2005, included 23 affirmative defenses and two counterclaims. In the first counterclaim, defendant sought "an order declaring that plaintiffs' claims are required to be arbitrated in London and enjoining further proceedings in other fora inconsistent with the agreement to arbitrate." In their second counterclaim, defendant sought to limit any recovery by Ibeto to the sum of $500 in accordance with the Carriage of Goods by Sea Act ("COSGA"), 46 U.S.C. app. § 1304(5). De-

fendant was notified by Ibeto on August 9, 2005, that Ibeto had closed the arbitration proceeding it had begun in London five months earlier and intended to pursue the action it had commenced in Nigeria. To this end, Ibeto filed a motion on September 9, 2005, for a voluntary dismissal without prejudice of the action commenced in the Southern District of New York.

In addition to opposing Ibeto's motion for dismissal, on September 9, 2005, Bryggen filed its own motion, seeking an order "dismissing or staying plaintiffs' claim in favor of London arbitration and enjoining litigation of th[eir] dispute in Nigeria, or, in the alternative, declaring that any recovery shall be limited to the $500 limitation of liability, and granting to Bryggen such other and further relief" as may be "just and proper." The District Court's Opinion and Order responding to the motions of the parties was filed on November 21, 2005. *Ibeto Petrochem. Indus. v. M/T "Beffen"*, 412 F.Supp.2d 285 (S.D.N.Y. 2005).

The District Court first addressed Ibeto's motion for voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(2), which requires court permission to dismiss after service of an answer. In denying the motion, the court observed that "[t]he presence of ... counterclaims weighs against granting [Ibeto's] motion to dismiss," reasoning that the counterclaims would continue to stand if the action were dismissed. *Ibeto*, 412 F.Supp.2d at 290. The court further observed that Ibeto's "intent to litigate this matter in Nigeria also counsels against granting the voluntary dismissal," since allowing two actions to go forward could result in inconsistent determinations. *Id.*

The District Court next determined that the provision for arbitration made part of the Charter Party through the Asbatankvoy Form and the Chemlube Terms was binding on Ibeto as well as the defendants. *Id.* Although Ibeto was not a subscriber to the Charter Party, it was bound by the Bill of Lading to abide by the Charter Party terms, which included arbitration in London. *Id.* at 291. In the Opinion of the District Court, the broad terms of the arbitration provision and the general federal policy favoring that mode of dispute resolution required Ibeto to arbitrate its loss claim in London. *Id.* Accordingly, the Court's Opinion and Order compelled arbitration of the dispute between the parties and stayed this action pending completion of the arbitration.

As to the defendants' motion to limit Ibeto's recovery to $500 under COGSA, the District Court determined that "[b]ecause defendants' motion to compel arbitration has been granted, it is not necessary to reach the issue of limiting [Ibeto's] recovery." *Id.* at 292. The District Court stated: "While COGSA is contractually incorporated in the Asbatankvoy Terms, under the Chemlube Terms the London arbitrator is to apply English law, so it will be for the arbitrator to determine whether and to what extent COGSA applies." *Id.* (internal citation omitted). Accordingly, the motion to limit recovery was denied.

Finally, the District Court examined various factors bearing upon defendants' motion to enjoin Ibeto's litigation in Nigeria. First, the Court determined that the federal policy of promoting arbitration may be frustrated by such litigation. *See id.* at 292–93. Second, disparate results might obtain because, according to a declaration submitted by a Nigerian barrister, the Nigerian court would not recognize the COGSA limitation of liability. *See id.* at 293. The District Court stated that COGSA may be applied in the London arbitration and that the "potential disparity, and the race to judgment that it could provoke, weigh in favor of an antisuit injunction."

*Id.* Third, the court found that deterrence of forum shopping and other equitable considerations also weigh in favor of an injunction. *See id.* Fourth, the District Court found it "likely that adjudication of the same issue in two separate actions would result in inconvenience, inconsistency, and a possible race to judgment." *Id.* The Court's dispositive language relating to the injunction was limited to the following: "[D]efendants' motion to enjoin the Nigerian action [is] granted." *Id.*

## ANALYSIS

I. *Of the Denial of Voluntary Dismissal*

In challenging the District Court's ruling denying voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), Ibeto argues that the District Court erred in concluding that the counterclaims pleaded by the defendants foreclosed the right to voluntary dismissal. Rule 41(a)(2) provides in pertinent part as follows:

> If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.

Ibeto urges us to find that the District Court abused its discretion by accepting the demand for arbitration included in defendants' pleading as a counterclaim rather than an affirmative defense, and in failing to consider the applicable factors enumerated in *Zagano v. Fordham Univ.,* 900 F.2d 12 (2d Cir.1990). Those factors bear upon the merits of a motion for voluntary dismissal and include "the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *Id.* at 14. Whether a district court abuses its discretion in ruling on a voluntary dismissal motion cannot be determined without a consideration of these factors. In a case where a district court failed to consider these factors, we decided that we could not determine whether the court abused its discretion in granting a motion for voluntary dismissal, and we therefore were constrained to "remand the case for further consideration in light of *Zagano.*" *D'Alto v. Dahon Cal., Inc.,* 100 F.3d 281, 284 (2d Cir.1996).

To the extent that the Order of the District Court denied the motion for voluntary dismissal, it appears that we are without jurisdiction to review it, and we therefore may not consider the arguments of the parties regarding the merits of the motion. An order that is non-final and interlocutory, such as an order denying voluntary dismissal, is not appealable in light of the statutory provision conferring upon this Court "jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. Generally, a final order is an order of the district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal quotation marks omitted). Clearly, the Order denying dismissal here is not such an order.

There are some narrowly-drawn exceptions to the finality requirement, however. These exceptions allow an appeal to be taken from an interlocutory order where: (1) the order relates to injunctions, 28 U.S.C. § 1292(a)(1), receiverships, *id.* § 1292(a)(2), or "determin[ations of] the

rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed," *id.* § 1292(a)(3);[1] (2) the district court has certified for immediate appeal an order (i) that involves a controlling question of law, (ii) as to which there exists a substantial ground for difference of opinion, and (iii) the disposition of which may materially advance the ultimate determination of the litigation, *id.* § 1292(b); or (3) the order of the district court expressly directs the entry of a partial final judgment in a multi-claim or multi-party action upon a determination that there is no just reason for delay. FED. R. CIV. P. 54(b); *see Kahn v. Chase Manhattan Bank, N.A.,* 91 F.3d 385, 387 (2d Cir. 1996). None of the exceptions apply in the case at bar.

■ Appeals from interlocutory rulings also are permitted pursuant to a "practical construction" of 28 U.S.C. § 1291 known as the collateral order doctrine, which

> accommodates a "small class" of rulings, not concluding the litigation, but conclusively resolving "claims of right separable from, and collateral to, rights asserted in the action." The claims are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Will v. Hallock,* 546 U.S. 345, 126 S.Ct. 952, 957, 163 L.Ed.2d 836 (2006) (citation omitted).

The Supreme Court teaches that the collateral order doctrine is "modest [in]

scope" and that the conditions for its application, said to be "stringent," are as follows: that the an order " '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.' " *Will,* 126 S.Ct. at 957 (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (quoting *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. 2454)) (alterations in *Metcalf* ).

■ The collateral order doctrine does not provide a basis for review of an order *denying* voluntary dismissal. Although an order *granting* such dismissal brings an action to a conclusion, is final, and is therefore appealable as a final decision, *see, e.g., D'Alto,* 100 F.3d at 282, an order denying the motion fails the third condition required for invocation of the doctrine because it *is* effectively reviewable on appeal from the final judgment. Accordingly, we are without jurisdiction to review the merits of Ibeto's appeal insofar as it challenges the District Court's order denying voluntary dismissal.

## II. *Of the Anti–Foreign Suit Injunction*

### A. Of the Basis for the Injunction.

Underlying its Order enjoining further proceedings in Nigeria was the District Court's determination that the controversy between the parties ought to proceed by way of arbitration and that "[p]ermitting the Nigeria litigation to continue may frus-

---

1. While the Complaint in this action invokes admiralty jurisdiction, the Order appealed from does not fit within the admiralty exception. *See generally,* 23 FEDERAL PROCEDURE § 53:153 (L.Ed.2001). The exception applies only where the order determines the merits of the controversy but leaves only the question of damages or other details for deci-

sion. *See Blue Water Yacht Club Assoc. v. N.H. Ins. Co.,* 355 F.3d 139, 141 (2d Cir. 2004). Accordingly, "[a]n order staying an admiralty action in the district court pending arbitration is not a final order and is not appealable." *Lowry & Co., Inc. v. S.S. Le Moyne D'Iberville,* 372 F.2d 123, 124 (2d Cir. 1967).

trate the general federal policy of promoting arbitration." *Ibeto*, 412 F.Supp.2d at 292–93. Defendants contend that the anti-foreign suit injunction was not warranted because Ibeto did not contractually agree to arbitration with Bryggen in the first place.

While the Charter Party was entered into by Chemlube and Bryggen, its terms, including the provision for arbitration, were incorporated by reference in the Bill of Lading directing delivery from Chemlube to Ibeto in Lagos. According to the Bill of Lading, the shipment was "carried under and pursuant to the terms of the Charter Party dated 31 December 2003 between Chemlube International, Inc. as Charterer and Bryggen Shipping and Trading A/S as Owner and all conditions and exceptions whatsoever thereto." It was the Charter Party Fixture that incorporated the standard form Asbatankvoy Tanker Charter Party, which called for arbitration, and the Chemlube terms that provided for London as the place of arbitration and for the application of English law.

■ We long have held that "a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993). According to this rule, a charter party provision for such arbitration is binding on the parties to a Bill of Lading that incorporates the Charter Party by reference. *Id.*

More recently, we were confronted with the question of whether bills of lading specifically identified the charter party for the purpose of incorporating the charter party's arbitration clause. *See Cont'l Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281 (2d Cir.2003). The questioned provision stated: "All terms and conditions, liberties and exceptions of the charter party, dated as overleaf, are herewith incorporated." *Id.* at 283. In holding that the charter party with its arbitration provision was effectively incorporated in the bills of lading, we found as follows:

> While it would have been preferable to identify the charter party in more detail, *i.e.*, by mentioning the location and parties involved, we find that the specification of the date of the charter party, along with the references to charter parties made on the bill's face and overleaf, suffice to identify the relevant charter party with the specificity needed to give effect to the intended incorporation.

*Id.* at 283.

■ In the case before us, the Charter Party was specifically identified by date (December 31, 2003) and by the parties thereto (Chemlube as Charterer, Bryggen as Owner). That was more than sufficient to identify the relevant Charter Party (including the documents referred to in the Charter Party Fixture) and therefore to give effect to the incorporation of the arbitration clause under the provision incorporating "all conditions and exceptions whatsoever." The District Court's analysis comports with the general rule that "[w]here terms of the Charter Party are specifically incorporated by reference in the bill of lading, the Charter Party terms alone are to be looked to for the contract of the parties." 80 C.J.S. SHIPPING § 89. And, although the District Court's direction to proceed with arbitration in London is not appealable (nor is the stay of this action pending that arbitration), *see* 9 U.S.C. § 16(b)(1), (b)(2), we here note our agreement with the District Court's direction in light of Ibeto's challenge to arbitration as a basis for the anti-foreign suit injunction.

B. Of the Appropriateness of the Injunction and its Terms

Ibeto's challenge to the appropriateness of the District Court's injunction in regard to the action pending in Nigeria is properly before this Court. *See* 28 U.S.C. § 1292(a)(1).[2] Ibeto's contention that the injunction was inappropriate under the circumstances revealed in this case properly was rejected by the District Court. In issuing the injunction, the District Court carefully applied the test, set forth in *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 35–36 (2d Cir.1987), for injunctions against suits in foreign jurisdictions.

■ Pursuant to the *China Trade* test, [a]n anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *China Trade,* 837 F.2d at 35. Once past this threshold, courts are directed to consider a number of additional factors, including whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum. *Id.* at 36.

*In re Millenium Seacarriers, Inc.,* 458 F.3d 92, 97 n. 4 (2d Cir.2006) (quoting *Paramedics Electromedicina Comercial, Ltda. v. G.E. Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 652 (2d Cir.2004)) (alteration in *Millenium* ).

The "threshold" described is clearly met in this case, for the parties are the same in this matter and in the Nigerian proceeding and the resolution by arbitration of the case before the District Court is dispositive of the Nigerian proceeding. The factors then to be considered under the *China Trade* test are the following:

(1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*China Trade,* 837 F.2d at 35.

In the *China Trade* case, we found that the factors having "greater significance" there were threats to the enjoining forum's jurisdiction and to its strong public policies. *Id.* at 36. Finding no such threats, we determined that the equitable factors of that case were "not sufficient to overcome the restraint and caution required by international comity." *Id.* at 37. Some courts and commentators have erroneously interpreted *China Trade* to say that we consider *only* these two factors. *See, e.g., Gau Shan Co. Ltd. v. Bankers Trust Co.,* 956 F.2d 1349, 1353 (6th Cir.1992); Edwin A. Perry, *Killing One Bird with One Stone: How the United States Federal Courts Should Issue Foreign Antisuit Injunctions in the Information Age,* 8 U. MIAMI BUS. L. REV. 123, 142–43 (Winter 1999).

■ Applying all the factors, the District Court found that the general federal policy favoring arbitration might be frustrated by the Nigerian litigation; widely disparate results might obtain because the Nigerian Courts would not apply the provisions of COGSA; a race to judgment could be provoked by the disparity; equitable considerations such as deterring forum shopping favor the injunction; and "it is likely that adjudication of the same issues in two separate actions would result in

---

**2.** Bryggen's argument that we do not have jurisdiction to review the District Court's

grant of the anti-foreign suit injunction is rejected as meritless.

inconvenience, inconsistency, and a possible race to judgment." *Ibeto,* 412 F.Supp.2d at 293. The District Court foresaw "considerable inconvenience" in the movement of witnesses between the two venues. *Id.* The District Court determined, however, that the threat to jurisdiction factor did not apply since "both courts have in personam jurisdiction over the parties." *Id.* We agree with the foregoing analysis of the District Court in applying the *China Trade* factors and add our observation that the policy favoring arbitration is a strong one in the federal courts. *See Paramedics,* 369 F.3d at 654. Accordingly, the injunction is fully justified in this case. We note, however, that the District Court's application of the principle that " 'an anti-suit injunction may be proper where a party initiates foreign proceedings in an attempt to sidestep arbitration,' " *Ibeto,* 412 F.Supp.2d at 289 (quoting *LAIF X SPRL v. Axtel, S.A. de C.V.,* 390 F.3d 194, 199 (2d Cir.2004)), is not warranted here, where the proceeding in Nigeria was first in time.

The foregoing having been said, we reiterate our understanding that due regard for principles of international comity and reciprocity require a delicate touch in the issuance of anti-foreign suit injunctions, that such injunctions should be used sparingly, and that the pendency of a suit involving the same parties and same issues does not alone form the basis for such an injunction. *See China Trade,* 837 F.2d at 36. Having these caveats in mind, we think that the injunction in this case cuts much too broadly.

The learned District Court wrote only that "defendants' motion to enjoin the Nigerian action is granted." *Ibeto,* 412 F.Supp.2d at 293. The injunction should be directed specifically to the parties, for it is only the parties before a federal court who may be enjoined from prosecuting a suit in a foreign country. *See* 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3523 (2d ed.1984). Moreover, there is no need for the permanent injunction that the District Court seems to have issued. The parties need to be enjoined from proceeding in the courts of Nigeria only until the conclusion of the London arbitration and the consequent resolution of the still-pending case in the District Court. The District Court should modify its injunction with a specificity consonant with this determination.

## CONCLUSION

The appeal is dismissed in part, and the Order of the District Court is affirmed in part and modified in part, all in accordance with the foregoing. The case is remanded to the District Court for further proceedings as directed herein.