Regina JACOBS, Petitioner–Appellant,

v.

USA TRACK & FIELD and United States Anti–Doping Agency, Respondents–Appellees.

Docket No. 04–2738.

United States Court of Appeals, Second Circuit.

Argued: June 22, 2004.

Decided: July 8, 2004.

Edward G. Williams, Stewart Occhipinti, LLP, New York, NY, for Petitioner–Appellant.

Curt Holbreich (Mario Aieta, Daniel Jacobson, Garvey Schubert Barer, of counsel), Howard Rice Nemerovski Canady Falk & Rabkin, P.C., San Francisco, CA, for Respondent–Appellee USA Track & Field, Inc.

Brent E. Rychener (Matthew Barnett, Holme Roberts & Owen LLP, Bradley I. Ruskin, Proskauer Rose LLP, of counsel) Holme Roberts & Owen LLP, Colorado Springs, CO, for Respondent–Appellee United States Anti–Doping Agency.

Before: McLAUGHLIN, CABRANES, and WALLACE, Circuit Judges.[*]

CABRANES, Circuit Judge.

The issue presented is whether one party to an arbitration proceeding before the American Arbitration Association ("AAA") may obtain a court order, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, that the arbitration proceed under a particular set of AAA rules that the AAA has determined are inapplicable.

Petitioner, a world-class track athlete, appeals from the denial by the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*) of her petition to compel arbitration of a dispute in which she has been charged by respondents with a violation of "doping" rules prohibiting the use of certain substances, and has been threatened with, among other sanctions, a four-year suspension from participating in Olympic Games, trials, or qualifying events. The parties have agreed to arbitrate their dispute, but they disagree over which of two sets of rules governs the arbitration. Petitioner contends that the AAA's "Commercial Rules" apply, while respondents, U.S.A. Track and Field ("USATF") and the United States Anti–Doping Agency ("USADA"), maintain that the Commercial Rules have been supplanted in doping cases by a set of "Supplementary Procedures."

All parties agree that, under either set of rules, it is for the arbitrators to decide which set of rules to apply. However, the two sets of rules provide *different methods for selecting arbitrators*. At issue is which set of rules should govern the selection of arbitrators—who will themselves be charged with determining, among other things, which set of rules *should have* governed their selection. The AAA resolved this conundrum by determining, after considering submissions from the parties, that arbitrators should be selected pursuant to the Supplementary Procedures. The District Court held that it lacked jurisdiction to order otherwise. We affirm.

We hold that respondents have not "refused to arbitrate"—a prerequisite to compelling arbitration under Section 4 of the FAA—where the AAA has agreed with them and determined that arbitration should proceed under the Supplementary Procedures.

## BACKGROUND

Petitioner is the current world record holder and world champion in the indoor

---

[*] The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1,500 meter track event, and is a candidate for representing the United States in the 2004 Olympic Games. She is a member of respondent USATF, the organization recognized by the United States Olympic Committee ("USOC") as the national governing body for track and field in the United States. As a member of USATF, petitioner has expressly agreed to abide by its rules and regulations.

Respondent USADA is the independent anti-doping organization recognized by the USOC for Olympic sports in the United States, and is responsible for managing the testing of athletes to determine the presence of prohibited substances.

Following a competition in June 2003, petitioner provided a urine sample to USADA. Her sample tested positive for tetrahydrogestrinone ("THG"), a substance prohibited under anti-doping rules. By a letter dated December 16, 2003, USADA charged petitioner with a doping violation and threatened her with several sanctions, including a four-year period of ineligibility from participating in Olympic Games, trials, or qualifying events. By a letter dated December 29, 2003, petitioner denied the charges, and the same day she filed a Demand for Arbitration with the New York Regional Office of the AAA, seeking arbitration under the Commercial Rules. On January 9, 2004, USADA wrote to the AAA to advise that

> USADA considers [petitioner's] Demand for Arbitration as notice that [she] contests the sanction [proposed by USADA] and requests a hearing under the USADA Protocol and applicable AAA Supplementary Procedures for Arbitration Initiated by USADA.

Over the next two weeks, the parties submitted argument and documentation to the AAA on the issue of whether arbitration should proceed under the Commercial Rules or the Supplementary Procedures. On January 30, 2004, the AAA informed petitioner that arbitration would proceed under the Supplementary Procedures:

> The [AAA] has reviewed the USOC Constitution, USADA Protocol for Olympic Movement Testing and the contentions of the [petitioner], USADA and USATF and decided that this matter should proceed under the [AAA]'s Supplementary Procedures for Arbitration initiated by [USADA] as filed by USADA per Section 4 of the supplementary procedures.

On February 13, Petitioner filed a petition to compel arbitration in the District Court, seeking to compel arbitration under the Commercial Rules.[1]

The District Court held that it lacked jurisdiction, and accordingly denied the petition to compel arbitration. The Court described the dispute as "whether ... arbitration should be conducted under the Commercial Rules, as Petitioner contends, or the Supplementary Procedures, as Respondents contend." After reviewing several USOC and USATF bylaws and regulations, the Court concluded that "the USATF has conflicting requirements for the adjudication of alleged doping offenses ...." The Court observed, however, that "[b]oth the Commercial Rules and Supplementary Procedures ... include precisely the same rule with respect to the question of whether the Court or the arbitrator determines questions of arbitrability." Both sets of rules provide:

---

1. Petitioner originally named the AAA—in addition to USATF and USADA—as a respondent, but later agreed voluntarily to dismiss the AAA as a party. A stipulation to that effect was approved by the District Court, and an order of dismissal was entered on March 8, 2004.

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

*See* Commercial Rules, Rule 7; Supplementary Procedures, Rule 8. The Court held that, whichever set of rules applied, "the parties have agreed that all questions of arbitrability, including the validity and scope of the arbitration agreement, are reserved for arbitral rather than court determination." The Court concluded that it lacked jurisdiction, and denied the petition to compel arbitration.

On appeal, petitioner argues that the District Court should have granted the petition to compel arbitration under the Commercial Rules. Although she concedes that it is for the panel of arbitrators ultimately to decide which set of rules to apply, she argues that those arbitrators must be selected initially under the Commercial Rules, in accordance with her Demand.

## DISCUSSION

We review *de novo* the District Court's denial of a petition to compel arbitration. *See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir.2002); *Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 76 (2d Cir.1998).

Petitioner sought to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, which provides, in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Under the FAA, "the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" *Shaw Group Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir.2003) (quoting *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996)).

The parties agree that a valid agreement to arbitrate exists, but they disagree over whether, under the terms of that agreement, arbitration should proceed under the Commercial Rules or the Supplementary Procedures. We need not interpret the terms of the parties' agreement, however, because we hold that respondents have not "refused to arbitrate."

This case is controlled by *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192 (2d Cir.1984). In *Downing,* the plaintiff, a former employee of Merrill Lynch, sought to compel Merrill Lynch to arbitrate, before the New York Stock Exchange (the "Exchange"), a dispute involving the plaintiff's retention of documents containing confidential information. *Id.* at 193–95. The plaintiff had signed and filed with the Exchange a

form—also signed by an officer of Merrill Lynch—that contained an arbitration agreement. *Id.* at 193. The plaintiff sued in the district court seeking, among other things, a declaratory judgment that the dispute was arbitrable, an order compelling arbitration before the Exchange pursuant to Section 4 of the FAA, and an order enjoining Merrill Lynch from commencing litigation in any other court. *Id.* at 194. We held that the district court properly declined to compel arbitration, because Merrill Lynch had not refused to arbitrate:

> Relief under Section 4 ... is available only to persons "aggrieved by the ... refusal of another to arbitrate under a written agreement for arbitration." Unless Merrill Lynch *commences litigation or is ordered to arbitrate this dispute by the Exchange and fails to do so,* it is not in default of any arbitration agreement it may have with Downing. Absent such default, arbitration cannot be compelled under Section 4.

*Id.* at 195 (emphasis added). We declined to compel arbitration under Section 4—having found no default by the respondent—and remanded the case to the district court to determine whether the plaintiff was entitled to a declaratory judgment that his dispute was arbitrable. *Id.*

In the instant case, respondents have not commenced litigation against petitioner. Nor have respondents failed to comply with an order to arbitrate by the AAA. Indeed, it is *petitioner* who, by filing this action, seeks to avoid the AAA's determination that arbitrators should be selected under the Supplementary Procedures. The fact that respondents raised before the AAA an objection to petitioner's Demand for Arbitration—and the fact that the AAA agreed with that objection—does not constitute a "refusal to arbitrate" on the part of respondents. *Cf. PaineWebber Inc. v. Faragalli,* 61 F.3d 1063, 1067 (3d Cir.1995) ("[U]nless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause ... the petitioner cannot claim to be 'aggrieved' under the FAA."); *Aaacon Auto Transport, Inc. v. Barnes,* 603 F.Supp. 1347, 1349 (S.D.N.Y.1985) (Weinfeld, J.) (holding that where the AAA determined that arbitration should be conducted in Maryland, a party could not compel arbitration in New York pursuant to 9 U.S.C. § 4, because the adverse party was willing to arbitrate in Maryland and therefore "ha[d] not failed, neglected, or refused to arbitrate").

Where there has been no refusal to arbitrate, petitioner cannot use Section 4 as a vehicle to seek review of the AAA's decision about how to proceed with the arbitration process. She has not sought a declaratory judgment as to the terms of her agreement to arbitrate, or presented any other basis for reviewing the AAA's decision. Accordingly, petitioner is not entitled to compel arbitration under Section 4, and the District Court correctly denied her petition. The order of the District Court is hereby affirmed.