**SCHLUMBERGER TECHNOLOGY CORPORATION, Appellant,**

v.

**BAKER HUGHES INCORPORATED, Appellee.**

No. 01–11–00562–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 13, 2011.

Kevin Dubose, Alexander Dubose & Townsend LLP, Houston, TX, for Appellant.

Ann Ryan Robertson, Christopher Benjamin Dove, Michael O. Sutton, Locke Lord Bissell & Liddell LLP, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, KEYES, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Schlumberger Technology Corporation and Baker Hughes Incorporated are in the midst of an arbitration proceeding to resolve patent disputes. A disagreement has arisen about whether the presiding panel of arbitrators has jurisdiction to determine a discrete subissue raised by Baker Hughes in the proceeding. Schlumberger contends that the subissue should be resolved by the same panel, but Baker Hughes argues that the issue is governed by a prior settlement agreement between the parties and must be resolved by the mediator who facilitated that agreement.

Baker Hughes initiated court proceedings, and both parties filed motions to compel arbitration in accordance with their respective positions. The trial court granted Baker Hughes's requested relief and denied Schlumberger's motion. Schlumberger now appeals from the trial court's interlocutory order that denied its motion to compel arbitration. We conclude that we have jurisdiction over this interlocutory appeal. We further conclude that the parties agreed to let the arbitrators resolve their disagreement about the proper arbitral forum for their dispute and that the trial court should have compelled arbitration of that issue. Accordingly, we reverse the trial court's order denying Schlumberger's motion, and we remand for further proceedings consistent with this opinion.

## Background

Schlumberger and Baker Hughes are competitors in the business of developing, manufacturing, and marketing tools for use in the oil and gas industry. Both own or control patents related to such tools. At various times, disputes have arisen about each party's alleged infringement of the other's patents. One of these disputes involved reciprocal claims relating to sensor tools used to gather information and fluid samples from oil and gas wells. Baker Hughes claimed that Schlumberger's tool infringed a certain patent, and Schlumberger alleged that Baker Hughes's tool infringed certain of its patents. The parties mediated this dispute, and in October 2004 they executed a settlement agreement. The parties granted each other reciprocal licenses to the patents at issue in that dispute, and they released and discharged each other from "any and all claims, demands or suits, known or unknown, fixed or contingent, liquidated or unliquidated whether or not asserted in the above case, as of this date, arising from or related to the events and transactions which are subject matter to this case." The 2004 settlement agreement also contained the following dispute resolution provision:

> If a dispute arises with regard to the interpretation and/or performance of this agreement or any of its provisions, the parties agree to attempt to resolve same by phone conference with the Mediator who facilitated this settlement. If the parties cannot resolve their differences by telephone conference, then each agrees to schedule a day of mediation with the Mediator within thirty (30) days to resolve the disputes and to share the costs of the same equally. If a party refuses to mediate, then the parties agree to submit the issue to binding arbitration before the Mediator in this matter and the party bringing the arbitration shall be entitled to recover attorney's fees or costs in such arbitration.

After the 2004 settlement agreement was finalized, additional disputes arose between the parties concerning their intellectual property. To facilitate efficient resolution of these disputes, in 2009 the parties entered into two additional agreements: the Patent Dispute Resolution Agreement and the Patent Dispute Procedure Agreement. The Resolution Agreement provided that its purpose was to address and resolve then-current disputes and to provide a process for addressing future disputes about the infringement and validity of each party's patents. That agreement defined "Current Disputes" as "those Disputes for which assertions have been made prior to the signing of this Agreement," and it expressly referenced an attached exhibit that listed the Current Disputes. The Resolution Agreement also defined "Dispute" as:

> ... any dispute between the Parties arising out of or relating to or in connection with a claim of 1) infringement or the damages arising therefrom, or 2) the invalidity or unenforceability of either Party's Patents. "Dispute" shall also include disputes relating to the interpretation, construction, alleged breach of this Agreement, the Procedure Agreement, a license agreement or covenant not to sue relating to a Patent or Patents, or amounts paid under such a license agreement or covenant not to sue. Disputes arising under existing licenses or covenants not to sue shall be treated in accordance with Section 3.2, below.

Schlumberger and Baker Hughes agreed that "any Current Disputes or future Disputes ... shall be solely resolved as set forth in the Procedure Agreement."

Section 3 of the Resolution Agreement carved out an exception for disputes aris-

ing from any preexisting patent or license agreement that contained its own dispute resolution procedures. By that provision the parties agreed:

### 3. TREATMENT OF EXISTING AND FUTURE PATENT AGREEMENTS

3.1 Existing, unexpired patent agreements and licenses between the Parties will remain in effect and this Agreement and the Procedure Agreement shall have no impact on their terms, including negotiated royalty rates, royalty base, or restrictions on field of use.

3.2 Unless a dispute resolution process is set forth in an existing or future patent agreement or license, breaches of those agreements shall be subject to resolution in accordance with the terms of this Agreement.

Consistent with this provision, a merger clause provided that the Resolution Agreement constituted the parties' "entire agreement ... with respect to the same subject matter hereof" and superseded "all other agreements, whether written or oral except as provided by Section 3.1...."

If direct negotiations should fail to resolve a dispute encompassed by the Resolution Agreement, the Procedure Agreement specifies resolution by arbitration before a panel of American Arbitration Association arbitrators, pursuant to AAA rules. Pursuant to the Resolution and Procedure Agreements, the parties began arbitration before a panel of three AAA arbitrators to resolve a dispute as to whether a module of Baker Hughes's sensor tool infringes Schlumberger's patents. The parties agree that this dispute, which they reference as the "four-patent dispute," was one of the Current Disputes expressly identified in the Resolution

Agreement. During the course of that proceeding, Schlumberger submitted a report from its damages expert. Baker Hughes contends that Schlumberger's expert did not confine his analysis to the module and patents at issue in the four-patent dispute but instead included damages relating to the entire sensor tool. Baker Hughes argues that Schlumberger's damages model includes damages arising from alleged infringement of the patents that were licensed to Baker Hughes in the 2004 settlement agreement. Baker Hughes also contends that this damages claim was itself a breach of the 2004 settlement agreement.

Baker Hughes raised affirmative defenses of license and release in the four-patent dispute, and it invoked the dispute resolution provisions of the 2004 settlement agreement, contending that the new dispute about the scope of the releases under that agreement must be arbitrated before that agreement's mediator. Schlumberger took the position that this dispute about the proper arbitral forum was encapsulated within an expressly designated Current Dispute, governed by the Resolution and Procedure Agreements, and thereby should be determined within the ongoing AAA arbitration. In light of the parties' disagreement about the proper arbitral forum, the mediator informed the parties that she would not proceed with the dispute resolution process absent an order from the district court or agreement of the parties. Baker Hughes then filed an application to compel arbitration of the license and release issue before the mediator and a petition for declaratory judgment.

Meanwhile, the parties presented their arguments to the AAA panel by letter, and that panel responded with an "Interim Ruling on Defenses." The Interim Ruling summarized the dispute as encompassing

two issues: (1) "who has jurisdiction to decide particular substantive issues" and (2) "the substantive issues, namely whether the affirmative defenses of license or release ... were raised in a timely manner or were waived." The panel concluded, based on the Resolution Agreement, the Procedure Agreement, and the AAA rules applicable to the arbitration, that it had jurisdiction to determine its own jurisdiction and "sole jurisdiction" to resolve the "substantive" issue of whether Baker Hughes's affirmative defenses were waived. However, acknowledging that Baker Hughes had filed a motion to compel arbitration in the district court, and expressly invoking "the interest of judicial economy," the AAA panel temporarily stayed its own consideration of the "substantive" waiver issue to allow the district court time to consider the motion to compel arbitration under the 2004 settlement agreement. A few days later, Schlumberger filed in the district court its own Motion to Compel Arbitration and to Stay Proceedings, seeking an order staying proceedings in the district court and "compelling" Baker Hughes "to litigate its claims and defenses solely in the ongoing [AAA] arbitration."

After considering the parties' competing motions, the district court granted Baker Hughes's application to compel arbitration. In the same order, the court denied Schlumberger's motion and ordered the parties to arbitrate the disputes relating to the 2004 settlement agreement before its mediator. Schlumberger then filed this interlocutory appeal from the trial court's order denying its motion.

## Analysis

### I. Jurisdiction

Baker Hughes has moved to dismiss this appeal for lack of jurisdiction, so that is the threshold issue for our consideration. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex.2011). "Unless a statute authorizes an interlocutory appeal, appellate courts generally only have jurisdiction over final judgments." *Id.; see also Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). "We strictly apply statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable." *CMH Homes*, 340 S.W.3d at 447; *see also Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex.2001). Both parties invoke authorities applying the Federal Arbitration Act and the Texas Arbitration Act, and neither party suggests that one applies to the exclusion of the other, or that the result depends upon which law applies. Accordingly, we focus our analysis on the application of the TAA's interlocutory appeal provisions, which provide that a party may appeal an interlocutory order that denies an application to compel arbitration made under Section 171.021. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1) (West 2011).

### A. Schlumberger's motion

Baker Hughes argues that the trial court's order does not fit within the narrow statutory categories for which an interlocutory appeal is permitted. It first argues that Schlumberger's motion in the trial court was not truly an "application to compel arbitration" in the sense contemplated by the statute. *See id.* §§ 171.021, 171.098(a)(1). A primary contention supporting this argument is that the relief requested by Schlumberger merely would result in the parties continuing their ongoing arbitration proceeding. Thus Baker Hughes argues that the motion did not ask the trial court to compel a new arbitration but instead called upon the trial court to interfere with the arbitrators' administration of an ongoing proceeding. Baker

Hughes also argues that Schlumberger's motion did not qualify as an application to compel arbitration because Schlumberger could not satisfy the threshold requirement of a refusal to arbitrate. *See id.* § 171.021(a)(2). In response, Schlumberger contends that its motion was a proper application to compel arbitration and the trial court's denial of it is appealable under the plain language of the statute.

■■■ Section 171.098(a)(1) requires, as a predicate to our interlocutory appellate jurisdiction under that provision, the filing of "an application to compel arbitration made under Section 171.021" and an order denying that application. To prevail under Section 171.021, such a motion must show the existence of an agreement to arbitrate that applies to the parties' dispute and that the opposing party has refused to arbitrate. *See id.* We do not agree with Baker Hughes, however, that a searching examination of the merits of Schlumberger's motion is the appropriate method to determine whether it qualifies as "an application to compel arbitration" contemplated by Section 171.098(a)(1). Instead, it is the substance and function of the application viewed in the context of the record that controls our interlocutory jurisdiction. *Cf. Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.,* 95 S.W.3d 511, 515 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (analyzing substance and function of order purportedly giving rise to interlocutory appellate jurisdiction under Section 171.098(a)(1)). Accordingly, we will consider Schlumberger's motion in the context of the record to determine whether the denial of the application is subject to interlocutory review.

Schlumberger filed a document in the trial court entitled "Defendant's Motion to Compel Arbitration and to Stay Proceedings." In this motion, Schlumberger alleged the existence of an agreement to arbitrate arising from the Resolution and Procedure Agreements. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a)(1). Schlumberger further alleged that the AAA panel was empowered to determine and already had determined that the scope of that proceeding included Baker Hughes's release and license defense. Finally, Schlumberger alleged that rather than arbitrating this issue before the AAA panel, Baker Hughes filed suit to compel arbitration under the 2004 settlement agreement. Thus, Schlumberger clearly informed the trial court that in the context of an ongoing arbitration, the parties had a discrete disagreement about the appropriate venue in which a particular subissue was to be arbitrated and both parties relied on separate arbitration agreements to support their positions.

### 1. Jurisdictional effect of pending arbitration proceeding

■■■ Baker Hughes contends that this could not be a motion to compel arbitration in the sense contemplated by the statute because the parties were already in engaged in an ongoing arbitration. Although we are obliged to construe the jurisdictional statute narrowly, *see, e.g., CMH Homes,* 340 S.W.3d at 447, the text of the statute does not provide any basis for Baker Hughes's proposed distinction between a request to initiate a new arbitration proceeding and a request to require arbitration of a subsidiary issue when its arbitrability has been disputed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1). The sole authority relied upon by Baker Hughes for this proposition lends no support. In *Dealer Computer Services, Inc. v. Red Hill Ford, Inc.,* No. 05–10–00983–CV, 2010 WL 3566124, at *1 (Tex.App.-Dallas Sept. 15, 2010, no pet.) (mem. op.), the trial court had issued a restraining order staying arbitration proceedings after

Red Hill Ford alleged that the arbitration panel had engaged in misconduct. *See* 2010 WL 3566124, at *1. Two months after the restraining order expired, the final arbitration hearing had not yet been rescheduled "due to pending motions and other issues," and Dealer Computer moved to compel a return to the pending arbitration. *Id.* The court of appeals held that it lacked jurisdiction because there was no allegation that Red Hill Ford failed, neglected, or refused to arbitrate under a written agreement. *Id.* Unlike an attempt to stay proceedings based on alleged arbitrator misconduct, Schlumberger's allegation that Baker Hughes sought to compel a separate arbitration rather than submitting its defenses to the AAA panel is functionally equivalent to an allegation that Baker Hughes failed, neglected, or refused to arbitrate the disputed issue.

Baker Hughes also contends that "interlocutory appeal is not available to challenge orders in cases where arbitration was originally compelled." But there is nothing in the appellate record to show that the AAA arbitration was "originally compelled." Indeed, the parties' briefing in this Court suggests that the AAA arbitration was instituted by agreement of the parties. Moreover, the authority relied upon by Baker Hughes in this regard, *HEB Grocery Co., L.P. v. Kirksey*, No. 14–10–00217–CV, 2010 WL 1790878 (Tex. App.-Houston [14th Dist.] May 6, 2010, no pet.) (mem. op.) (per curiam), is not applicable to this dispute because the jurisdictional defect in that case was that no statutory provision authorized an interlocutory appeal from an order granting recusal of one arbitrator and substituting another. *See* 2010 WL 1790878, at *2.

## 2. Jurisdictional effect of the merits of Schlumberger's motion

Baker Hughes also argues that this court lacks jurisdiction because Schlumberger cannot show that Baker Hughes refused to arbitrate, which must be shown to compel arbitration under Section 171.021(a). This argument conflates the characterization of Schlumberger's motion as an "application to compel arbitration" with its ultimate merits. Put another way, under Baker Hughes's interpretation of Section 171.098(a)(1), we would only have appellate jurisdiction when a trial court incorrectly denied an application to compel arbitration made under Section 171.021. Again acknowledging that we narrowly construe all statutes establishing our interlocutory appellate jurisdiction, *see, e.g., CMH Homes*, 340 S.W.3d at 447, no practical limitation of our review is achieved if we review the merits of the underlying motion in order to determine whether we have jurisdiction over the denial of it.

Instead, we consider the nature of the motion in the context of the record. *Cf. Walker Sand*, 95 S.W.3d at 515. Viewed in that light, it is apparent that while Baker Hughes did not flatly refuse to arbitrate the dispute in any arbitral forum (it was willing to arbitrate the dispute before the mediator of the 2004 settlement agreement), by initiating these proceedings and by withholding its consent to arbitrating in accordance with what Schlumberger contends in its motion is the controlling agreement, Baker Hughes resisted arbitration of the particular dispute at issue before the AAA panel. Reserving judgment on the ultimate merits of the motion for purposes of our jurisdictional inquiry, we conclude that the motion is an application to compel arbitration on the grounds that Baker Hughes is actively resisting arbitration under the terms of what Schlumberger alleges is the controlling arbitration agreement.

## 3. Jurisdictional effect of the relief sought by Schlumberger's motion

Finally, Baker Hughes argues that rather than constituting an application to com-

pel arbitration, Schlumberger's motion is merely a response to Baker Hughes's motion, particularly because the relief sought by Schlumberger allegedly was no different from what would have resulted if the trial court had denied Baker Hughes's motion. This argument fails because Schlumberger, in its motion, sought affirmative relief beyond the mere denial of Baker Hughes's motion. Schlumberger argued that the AAA panel has the sole power to decide the proper arbitral venue for the merits of Baker Hughes's defenses, and it also argued that the AAA panel had actually decided that question in favor of its own jurisdiction. Schlumberger thus sought an order from the trial court ordering Baker Hughes "to litigate its claims and defenses solely in the ongoing [AAA] arbitration." The mere denial of Baker Hughes's motion would not necessarily mean that the AAA panel would decide these disputed issues against Baker Hughes (unless the AAA panel had already decided them in its Interim Ruling, which the parties dispute and Baker Hughes has denied). Accordingly, Baker Hughes would remain free to argue to the AAA panel that a separate arbitration is required on its defenses. Schlumberger's motion asked for something more than the mere denial of the Baker Hughes motion; it sought an affirmative order from the trial court deciding the underlying arbitrability question in its favor.

\* \* \*

Viewing the motion in the context of the record, we conclude that the substance and function of Schlumberger's motion was to allege the existence of an agreement to arbitrate that applied to the parties' dispute—i.e. the Resolution Agreement—and that Baker Hughes refused to arbitrate in accordance with that agreement. *Cf. Walker Sand,* 95 S.W.3d at 515. We therefore hold that Schlumberger's motion

qualified as "an application to compel arbitration made under Section 171.021" for the purposes of our interlocutory jurisdiction under Section 171.098(a)(1).

## B. Trial court's order

We next consider whether the trial court's order qualifies as an "order denying" such an application. Under the plain language of the TAA, it is the denial of "an application to compel arbitration"—not the denial of arbitration in the general sense—that gives rise to the right to an interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1). "[I]t is the substance and function of the order viewed in the context of the record that controls our interlocutory jurisdiction," not Baker Hughes's characterization of the order. *Walker Sand,* 95 S.W.3d at 515; *see also Texas La Fiesta Auto Sales, LLC v. Belk,* No. 14–10–01146–CV, 2011 WL 4090381, at \*4 (Tex.App.-Houston [14th Dist.] Sept. 15, 2011, no. pet. h.); *McReynolds v. Elston,* 222 S.W.3d 731, 738 (Tex. App.-Houston [14th Dist.] 2007, no pet.).

The trial court evidently understood Schlumberger's motion to be a motion to compel arbitration. In a single order, the court stated that it had considered both Baker Hughes's "Application to Compel Arbitration And Petition for Declaratory Judgment" and Schlumberger's "Motion to Compel Arbitration and Stay Proceedings." In its order, the court expressly granted "Baker Hughes's application," denied "Schlumberger's motion," and ordered the parties "to arbitrate the disputes relating to the 2004 Settlement Agreement" before the mediator. Thus, at least on its face, the order purports and appears to be one "denying an application to compel arbitration." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1).

The substance and function of the order support the trial court's express character-

ization. Baker Hughes sought to enforce its alleged contractual right to arbitration that arose under the 2004 settlement agreement. Likewise, Schlumberger sought to enforce its alleged contractual right to arbitration that arose under the Resolution and Procedure Agreements. The parties' dispute about the appropriate arbitral forum indicates that the difference between the two alternatives is significant, including different methods of arbitration and different arbitrators. The trial court considered two related arbitration agreements, granted a motion seeking to compel arbitration under one of them, and denied a motion seeking to compel arbitration under the other. As in *McReynolds,* Schlumberger did not simply seek to substitute one arbitrator for another; it sought to enforce an express contractual right. *See McReynolds,* 222 S.W.3d at 738. Baker Hughes attempts to distinguish the holding that interlocutory jurisdiction existed in *McReynolds* because, although it involved competing arbitration agreements, the appellant in that case sought to initiate a new and separate arbitration proceeding, unlike Schlumberger, which is seeking to continue in an ongoing arbitration. We acknowledge that distinction between the two fact patterns, but it does not alter our analysis. Although the trial court ordered an arbitration under the 2004 settlement agreement to proceed, it specifically denied Schlumberger's claimed contractual right to arbitration under the Resolution and Procedure Agreements, which Schlumberger sought to enforce through its own motion to compel arbitration.

Based on the trial court's characterization of Schlumberger's motion as one to compel arbitration, its express denial of that motion, and the resulting denial of Schlumberger's asserted contractual right to arbitration, we conclude that the trial court's order was an order denying an application to compel arbitration. *See McReynolds,* 222 S.W.3d at 738–39. This order is not insulated from appellate review conferred by statute simply because it also grants a competing motion to compel arbitration. *Cf. E. Tex. Salt Water Disposal Co. v. Werline,* 307 S.W.3d 267, 270 (Tex.2010) (holding that judgment denying confirmation of arbitral award was appealable even though order also vacated award and directed rehearing). Accordingly we hold that we have jurisdiction over this interlocutory appeal, and we deny Baker Hughes's motion to dismiss.

## II. Application to compel arbitration

■ We now consider the merits of Schlumberger's appeal from the denial of its application to compel arbitration. Generally speaking, we review the trial court's denial of a motion to compel arbitration for abuse of discretion. *See Okorafor v. Uncle Sam & Assocs., Inc.,* 295 S.W.3d 27, 38 (Tex.App.-Houston [1st Dist.] 2009, pet. denied); *see also* W. Wendall Hall et al., *Hall's Standards of Review in Texas,* 42 St. Mary's L.J. 1, 78 (2010) (citing *Jack B. Anglin Co.,* 842 S.W.2d at 271). However, "[w]hen an appeal from a denial of a motion to compel arbitration turns on a legal determination . . . we apply a de novo standard." *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 55 n. 9 (Tex.2008).

Schlumberger argues that the AAA panel had the authority to determine its own jurisdiction, the panel determined that it had jurisdiction to decide the merits of Baker Hughes's defenses based on the 2004 settlement agreement, and the trial court should have deferred to that ruling. Baker Hughes responds that there is no reason to reach these questions because it never refused to arbitrate. On the merits, Baker Hughes contends as a matter of contract interpretation that the 2004 settlement agreement rather than the Resolu-

tion Agreement controls the dispute resolution procedure. It argues, therefore, that the Resolution Agreement is inapplicable, and the dispute was appropriately resolved by the district court because the 2004 agreement does not reserve arbitrability disputes for the arbitrator.

### A. Refusal to arbitrate

First, we confront the contention that Schlumberger was not entitled to relief on the theory that Baker Hughes's willingness to arbitrate in its preferred arbitral forum means that it has not refused to arbitrate. See TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a)(2). Baker Hughes reasons that it has agreed to arbitrate, and it is simply following proper arbitration procedure to assert its rights under the parties' contracts.

The sole authority relied upon by Baker Hughes for this position is *Jacobs v. USA Track & Field*, 374 F.3d 85 (2d Cir. 2004), a case decided under the Federal Arbitration Act, 9 U.S.C. § 4. The parties in *Jacobs* both agreed to arbitrate their dispute before the AAA, but they disagreed about the rules to govern the arbitration, including the procedure for selecting arbitrators. See *Jacobs*, 374 F.3d at 86. Both of the alternative sets of procedures provided that the arbitrators had the power to decide which rules applied. See *id.* The AAA considered submissions from both parties and ruled against Jacobs, who then filed a motion to compel arbitration under her preferred rules. The trial court dismissed the case for want of jurisdiction, and the Second Circuit affirmed on the basis that the respondents had not refused to arbitrate, which is a prerequisite to compelling arbitration under Section 4 of the FAA. See *id.* In so holding, the court specifically noted that, unlike Baker Hughes in this case, "respondents have not commenced litigation against petitioner." *Id.* at 89. The case

that the *Jacobs* court identified as controlling the result, *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192 (2d Cir.1984), went further and identified the commencement of litigation as a "default" of an arbitration agreement giving rise to the right to seek relief under Section 4. See *Downing*, 725 F.2d at 195; see also *Jones v. Gen. Motors Corp.*, 640 F.Supp.2d 1124, 1145 (D.Ariz.2009) ("the very commencing of litigation can itself be interpreted as a refusal to arbitrate").

We find the reasoning of *Downing* and its progeny to be persuasive and equally applicable to the similar language in the TAA requiring that a party refuse to arbitrate as a predicate to an order compelling arbitration. See TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a)(2). As applied to this case, the parties were already involved in an ongoing arbitration pursuant to the Resolution Agreement. As discussed in greater detail below, the parties clearly and unmistakably agreed to submit disputes about the interpretation of the Resolution Agreement to the arbitration panel. In the course of that proceeding, Baker Hughes asserted that its license or release defenses must be arbitrated in another forum; Schlumberger disagreed. Baker Hughes's initiation of this court proceeding to compel a separate arbitration before a separate arbitrator pursuant to different rules constitutes an effective refusal to arbitrate pursuant to the Resolution Agreement because Baker Hughes sought to circumvent a resolution of this arbitrability dispute by the AAA panel despite agreeing in the Resolution Agreement to submit such disputes to the AAA panel. We therefore conclude, as a matter of law as applied to the undisputed procedural facts, that Baker Hughes refused to arbitrate under the Resolution Agreement and Schlumberger properly invoked Section

171.021 to compel arbitration under that agreement.

### B. Arbitrability of dispute over proper arbitral forum

Turning to the merits of the motion denied by the trial court, we begin by considering Schlumberger's contention that the AAA panel had authority under the Resolution Agreement to determine its own jurisdiction. This is an essential element of Schlumberger's motion to compel because otherwise there is no enforceable "agreement to arbitrate." *Id.* § 171.021(a)(1). This determination depends on an interpretation of the parties' contracts, which we review de novo. *See In re Dillard Dep't Stores, Inc.,* 186 S.W.3d 514, 515 (Tex.2006); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003). Unless the parties clearly and unmistakably agree to submit threshold questions of arbitrability to arbitration, these issues are to be resolved by courts. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995); *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005); *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Trust,* 249 S.W.3d 34, 39–40 (Tex.App.-Houston [1st Dist.] 2007 pet. denied). However, the express incorporation of rules that empower the arbitrator to determine arbitrability—such as the AAA Commercial Arbitration Rules—has been held to be clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues. *See, e.g., Burlington Res. Oil & Gas Co.,* 249 S.W.3d at 40–41; *Haddock v. Quinn,* 287 S.W.3d 158, 172 (Tex.App.-Fort Worth 2009, pet. denied).

The pending four-patent dispute is governed by the Resolution Agreement, which provides that "any Current Disputes or future Disputes ... shall be solely resolved as set forth in the Procedure Agreement." The parties agree that the underlying four-patent dispute is a Current Dispute under the Resolution Agreement. Other "Disputes" to be "solely resolved as set forth in the Resolution Agreement" include "disputes relating to the interpretation, construction, alleged breach of this [Resolution] Agreement, [and] the Procedure Agreement," but as noted above and argued by Baker Hughes, "[d]isputes arising under existing licenses ... shall be treated in accordance with Section 3.2," which excepts any existing or future patent agreement or license with its own dispute resolution process.

It is therefore apparent that Schlumberger and Baker Hughes have identified two separate "Disputes." One dispute is a disagreement of contract interpretation about whether the merits of Baker Hughes's license or release defense should be decided under the Resolution and Procedure Agreements by the AAA panel or under the 2004 settlement agreement's dispute resolution procedure by the mediator who facilitated that agreement. A separate dispute concerns the choice of forum to decide the answer to the contract interpretation dispute.

This latter dispute about the appropriate forum arose in the context of an ongoing arbitration governed by the Resolution Agreement. As reflected by the parties' arguments as described above, the answer depends on an interpretation of the Resolution Agreement. Although Baker Hughes has a colorable argument that the merits of the contract interpretation dispute require a separate proceeding under the 2004 settlement agreement, that argument itself depends on an interpretation of the Resolution Agreement. And the parties agreed that "disputes relating to the interpretation" and "construction" of the Resolution Agreement are themselves "Disputes," which are to be "solely re-

solved as set forth in the Procedure Agreement."

The Procedure Agreement requires arbitration to be conducted "pursuant to administration by the AAA" under the AAA Commercial Arbitration Rules. Under Rule 7(a) of the Commercial Arbitration Rules, the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, Rule 7(a) (2009). The parties thus incorporated the AAA Commercial Arbitration Rules into the Resolution and Procedure Agreements. Under Rule 7(a) of the Commercial Arbitration Rules, the AAA panel had authority to interpret the Resolution Agreement and thereby determine the scope of the four-patent arbitration. The AAA panel's authority extends to determining whether Baker Hughes's license and release defense relates to a claim of infringement or the damages arising therefrom such that it is to be resolved by the AAA panel as part of the pending four-patent arbitration, as contemplated by the Resolution Agreement's definition of "dispute." Or, the panel could determine the license and release defense implicates a breach of an existing agreement, as contemplated by the carve-out provision in section 3 of the Resolution Agreement, thus triggering the dispute resolution provision of the 2004 settlement agreement. There are no provisions in the Resolution or Procedure Agreements that negate the arbitrators' power under AAA Rule 7(a) to determine the arbitrability of a defense raised in arbitration. Thus, we conclude that this issue of contract interpretation was a question for the AAA panel, not the trial court and not this court. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452–53, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003) (holding that interpretation of arbitration contract was question for arbitrators).

In its motion to compel arbitration, Schlumberger asserted that the merits of Baker Hughes's defense was within the scope of the AAA arbitration and that the parties had agreed to let the AAA panel determine issues of arbitrability. Because the AAA panel had authority to determine the question of contract interpretation, the trial court should have granted this aspect of Schlumberger's motion so that the dispute could be resolved by the AAA panel, as the parties agreed in the Resolution Agreement. *See id.* at 452–53, 123 S.Ct. at 2407.

### C. Determination by AAA panel

Finally, we address the ultimate relief requested by Schlumberger, an order that these proceedings be stayed and that Baker Hughes be required to litigate the merits of its license and release defense before the AAA panel. To the extent Schlumberger argues it is entitled to this relief on the merits of its arguments about the interpretation of the various arbitration agreements, Schlumberger's arguments are appropriately addressed to the AAA panel, as explained above. To the extent Schlumberger contends that the AAA panel has already resolved the question in favor of its own jurisdiction, we conclude that the appellate record provided to us is inconclusive as to whether that was the intended effect of the AAA panel's Interim Ruling. If Schlumberger's contention in this regard is a correct representation of the AAA panel's intended ruling, then it can be implemented by the panel. If, on the other hand, the AAA has reserved and not yet resolved the question, the parties should direct their arguments to that panel. In deference to the parties' agreement to submit the question to the arbitrators,

we express no opinion on the proper legal conclusion.

## Conclusion

We deny Baker Hughes's motion to dismiss this appeal. We reverse the trial court's interlocutory order denying Schlumberger's motion in its entirety, and we remand the case to the trial court with an instruction to grant Schlumberger's motion to compel in part by ordering the parties to arbitrate before the AAA panel the contract interpretation question of whether the AAA panel has jurisdiction over the merits of Baker Hughes's license and release defense.