In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00101-CV
_____

ORANGE COUNTY SHERIFF'S OFFICE EMPLOYEES
ASSOCIATION, JASON GUIDROZ, TRACY SORGE, MATTHEW
WAPPLER, JESSICA JOHNNIE, MICHAEL LUCIA, MATT BRYANT,
ANDREW HOLLIER, ELIZABETH FREDERICK, JONATHAN PAYNE,
DONALD HARMON, CENOVIA DEMPSEY, MARK FELTS,
AND SAMANTHA COURTNEY, Appellants

V.

ORANGE COUNTY, TEXAS, Appellee

_____

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D-200,792-C**
_____

**MEMORANDUM OPINION**

In this appeal we must decide whether the trial court erred in granting a

summary judgment to Orange County, Texas (Appellee or the County) in a

declaratory judgment and injunction action the County filed against thirteen former

1

employees[1] (the former Deputies) of the Orange County Sheriff's Department and against the Orange County Sheriff's Office Employees Association (the Association). The County and the Association have a Collective Bargaining Agreement (CBA) in place which governs certain employment disputes and contains an arbitration provision. The County filed a traditional Motion for Summary Judgment seeking a judgment declaring that the new Sheriff's "nonappointment" of the former Deputies and his other decisions to hire or promote others were not "disciplinary actions" governed by the CBA and the County argued that arbitration was not required. The trial court granted the County's summary judgment, and the former Deputies and the Association filed this appeal. Because we conclude the question of whether the Sheriff's decisions are governed by the CBA is a "gateway issue" to be determined by the arbitrator in accordance with the terms of the CBA, we reverse and remand.

Background

Each of the former Deputies served as a deputy under previously elected Sheriff Keith Merritt (Sheriff Merritt) until June of 2020. Sheriff Merritt did not run for reelection, and he retired in June 2020, six months before the end of his four-

---

[1] The former Deputies include Matt Bryant, Samantha Courtney, Cenovia Dempsey, Mark Felts, Elizabeth Frederick, Jason Guidroz, Andrew Hollier, Jessica Johnnie, Donald Harmon, Michael Lucia, Jonathan Payne, Tracy Sorge, and Matthew Wappler.

year term.[2] In March of 2020, Jimmy Mooney ran for Sheriff and won the Republican Primary.[3] Mooney was unopposed in the General Election, and he was elected to a full four-year term in the general election held in November of 2020.[4] Sheriff Elect Mooney sent a letter dated June 10, 2022 to the deputies named as parties herein, stating:

> As you know, under Texas Law, your TCOLE Commission, held by the Orange County Sheriff's Office expires on June 30, 2020 due to Sheriff Merritt's early retirement. The newly elected sheriff must sign the deputization for each sworn position including his ranking staff, deputies, correctional officers and telecommunicators.
>
> In the event that I am appointed, it is incumbent upon me to extend offers of employment to those applicants that I, in my judgment, would consider to be the "best fit" for my administration. After careful consideration, I have filled all available positions within the Sheriff's Office. It is with much regret that I am unable to extend an offer of employment to you at this time.
>
> It is my obligation under state law, to render an accurate accounting of all Sheriff's office property. Although I cannot currently require you to do so, it is strongly suggested that you gather all Orange County

---

[2] Sheriff Merritt was elected to a four-year term of office beginning January 1, 2017 and ending December 31, 2020. *See* Tex. Const. Art. V, § 23 (providing that county sheriffs shall hold office for a term of four years and vacancies shall be filled by the Commissioners Court until the next general election).

[3] An appellate court has the discretion to take judicial notice of adjudicative facts that are matters of public record for the first time on appeal. *See* Tex. R. Evid. 201(b), (c), and (f). Orange County, Texas Election Results: March 2020 Primary Results, https://www.co.orange.tx.us/media/Elections/2020%20Primary/Election%20Summary_031020.pdf (last visited February 12, 2023).

[4] Orange County, Texas Election Results: November 2020 General Results, https://www.co.orange.tx.us/media/Elections/2020/Orange%20County%20General%202020%20Election%20Day.pdf (last visited February 12, 2023).

Sheriff's Office property within your possession and be prepared to surrender this property on or before the 30th day of June, 2020, at 5:00 p.m. I will be working with the Sheriff's Office Purchasing Agent along with Orange County's Purchasing Agent to render an accurate accounting of all county property. It is my obligation to fulfill that request.

Although I am unable to extend an offer of employment to you at this time, I wish you the best of luck in all of your endeavors.

Sincerely,

Jimmy Lane Mooney
Sheriff Elect

The Orange County Commissioners appointed Sheriff Elect Jimmy Mooney (Sheriff Mooney) to fill the remaining months of Merritt's unexpired term.[5] Sheriff Mooney took office on July 1, 2020. Sheriff Mooney did not appoint twelve of the former Deputies who had served under Sheriff Merritt to a position in Sheriff Mooney's administration, and he offered one of the former Deputies (Dempsey) a different position[6] from the one she held under Sheriff Merritt. Sheriff Mooney also promoted several other deputies.

On or about July 6, 2020, the former Deputies and the Association filed grievances (Separation Grievances) alleging that their nonappointments were

---

[5] A Sheriff serves a four-year term of office, and any vacancy shall "be filled by the Commissioners Court until the next general election." Tex. Const. Art. V, § 23.

[6] Dempsey did not accept the new position and she retired, and on appeal she asserts the offer of a new position and failure to offer her the same position was a "disciplinary action."

4

"disciplinary actions" under the CBA. The Association also sent a letter to Sheriff Mooney, asserting a grievance on behalf of the Association and complaining that an undisclosed number of other deputies were promoted or hired into positions that were subject to the CBA (Promotion Grievance). The former Deputies and the Association also requested arbitration under the CBA.

The County filed suit against the former Deputies and the Association seeking temporary injunctive relief to maintain the status quo pending disposition of the parties' dispute. The County sought a declaratory judgment asking the trial court to declare that Sheriff Mooney's decision not to appoint the former Deputies and his promotion decisions that were challenged by the Association were not subject to the CBA. The Deputies and the Association filed an answer.[7]

The trial court granted the County a temporary injunction. The trial court sent a notice to the parties of its ruling and then it signed Plaintiff's Opposed Proposed Temporary Injunction Order. In its order, the trial court made several findings, including one that states:

> The Defendants' Separation Grievances and the Promotion/Hiring Grievance allege that the failure to re-hire or appoint deputies to a position in the administration of Sherriff Lane Mooney ("Sheriff Mooney") was a disciplinary action under the CBA. Sheriff Mooney

---

[7] Defendants Sorge and Payne also filed an Amended Answer, Third-Party Original Petition against Sheriff Mooney in his individual capacity, and Counterclaim and Jury Demand. On December 15, 2020, Plaintiff filed "Plaintiff Orange County Texas' Opposed Motion for Severance." The trial court granted the severance of Sorge's and Payne's counterclaims and they are not part of this appeal.

did not terminate the Defendants, and they were never hired by Sheriff Mooney. Sheriff Mooney had the right by law to hire deputies to serve in his administration, but he also had the right not to hire deputies serving under the prior sheriff, Sheriff Keith Merritt ("Sheriff Merritt"). The Defendants' terms as deputy sheriffs expired on the date that Sheriff Merritt retired or June 30, 2020. There is nothing in the CBA that expressly limits the right of the Sheriff to make employee decisions. The Sheriff is clearly enabled to hire who he wants.

The defendants did not take an interlocutory appeal of the trial court's order granting the temporary injunction.

Thereafter, the County filed a traditional Motion for Summary Judgment seeking a judgment declaring that the new Sheriff's appointment decisions were not "disciplinary actions" governed by the CBA and that arbitration was not required. The County argued in its Motion for Summary Judgment and Reply in Support of its Motion that "the CBA does not govern or abrogate a sheriff's constitutional and statutory authority to appoint deputies at the commencement of his term in office [and that] is supported by the summary judgment evidence, Texas case law, and this Court's prior ruling."

The former Deputies and the Association filed responses to the Motion for Summary Judgment, and the trial court held a hearing on the motion. The trial court granted the County's traditional Motion for Summary Judgment and signed a declaratory judgment that states:

1. Orange County Sheriff Jimmy Lane Mooney's ("Sheriff Mooney") deputy appointments and decisions not to reappoint

6

deputies whose assignments expired are not "disciplinary actions" as defined by the Collective Bargaining Agreement ("CBA").

2. Sheriff Mooney's deputy appointments and decisions not to reappoint deputies whose assignments expired are not governed by or subject to the CBA.

3. Individual Defendant Dempsey's retirement from the Orange County Sheriff's Office is not a "disciplinary action" as defined by the CBA.

4. Individual Defendant Dempsey's retirement from the Orange County Sheriff's Office is not grievable under the Grievance Process outlined in Article XX of the CBA.

5. Sheriff Mooney's decisions not to appoint Individual Defendants Guidroz, Sorge, Wappler, Johnnie, Lucia, Bryant, Hollier, Frederick, Payne, Harmon, Felts, and Courtney to positions within his administration are not "disciplinary actions" as defined by the CBA.

6. Sheriff Mooney's decisions not to appoint Individual Defendants Guidroz, Sorge, Wappler, Johnnie, Lucia, Bryant, Hollier, Frederick, Payne, Harmon, Felts, and Courtney to positions within his administration are not grievable under the Grievance Process outlined in Article XX of the CBA.

The former Deputies and the Association filed a timely notice of appeal. In one issue, the Appellants argue the trial court erred in granting the County's traditional Motion for Summary Judgment.[8]

---

[8] We received an Amicus Curiae brief from the Combined Law Enforcement Associations of Texas (CLEAT) also arguing that the trial court erred and that the matter should have been sent to arbitration.

Standard of Review

Declaratory judgments decided by summary judgment are reviewed under the same standards of review that govern summary judgments generally. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010. We review summary judgment orders de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for a traditional summary judgment must establish that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to a summary judgment, the burden shifts to the nonmovant to present evidence that raises a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We review the summary judgment record in the light most favorable to the non-movant, "indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Applicable Provisions in the CBA

PREAMBLE

Recitals

The following Agreement by and between Orange County, Texas, hereinafter referred to as the County, and the Orange County Sheriff's

8

Office Employees Union; hereinafter referred to as the Union, is recorded, in accordance with the Fire and Police Employee Relations Act of the State of Texas (Local Government Code, Chapter 174 et. seq.). The County and the Union agree that the efficient and uninterrupted performance of the County Sheriff's Office function is the primary purpose of this Agreement, as well as the establishment of fair and reasonable compensation and working conditions for the Officers of the County. The agreement has been reached through the process of collective bargaining with the objective of serving the aforementioned purposes and with the further objective of fostering effective cooperation between the County and its Officers. Therefore, this Agreement is intended to be in all respects in the public interest.

. . . .

## ARTICLE III

Definitions

Section 3.1 The terms set forth below shall be defined as follows:

. . . .

O. "Disciplinary Action" includes suspensions without pay, demotions, terminations, promotional pass overs, failure to rehire or any other punitive action which results in a loss of pay.

. . . .

## ARTICLE IV

Management Rights

Section 4.1 Subject to the terms of the Agreement, the Union recognizes the prerogative of the Orange County Commissioners' Court and the Sheriff to operate and manage their affairs in all respects and in accordance with their responsibilities. All power and authority which has not been abridged, delegated, granted or expressly limited by some written provision of this Agreement is retained by the County and the Sheriff.

. . . .

<u>ARTICLE XIX</u>

Disciplinary Actions

Section 19.1 The purpose of this Article is to establish a procedure for the fair, expeditious, and orderly adjustment of disciplinary actions taken by the Sheriff. For purposes of this Article, all disciplinary actions taken by the Sheriff are final except insofar as exempted hereinafter. All disciplinary actions shall be based upon whether or not just cause exists. For purposes of appeal of a disciplinary action, only the affected member of the bargaining unit may appeal a disciplinary action taken. This Section is not intended to preempt Government Code 614.

Section 19.2 A "complaint" is an allegation of misconduct made against an employee, which if true, would constitute a violation of the Sheriff's Office policies, procedures or a violation of law.

Section 19.3 Types of Complaints

. . . .

Section 19.4 Routing of Complaints

. . . .

Section 19.5 Investigation of Complaints

. . . .

Section 19.6 Final Notification

. . . .

Section 19.7 Disciplinary Appeal Procedure. The employee may appeal any "disciplinary action" in the same manner as a grievance in accordance with Article XX.

ARTICLE XX

GRIEVANCES

Section 20.01 A "grievance" is a disagreement between the parties regarding the interpretation, application or alleged violation of a provision of this agreement, or the appeal of a "disciplinary action". A grievance may be filed by any individual employee or by the employee[']s Union. A disciplinary appeal may only be filed by the effected employee.

Section 20.02 Process. A grievance as defined in Section 1, or a disciplinary appeal described in Section 19.8 above[9] shall be handled as follows:

Step 1. . . .

Step 2. . . .

Step 3. . . .

Step 4. . . . In its notice of intention to submit the dispute for final resolution, the Grievant and/or the County may request that the dispute be submitted to arbitration. The parties shall arbitrate consistent with the rules and procedures established by the American Arbitration Association. . . .

. . . .

Section 20.03 Arbitration:

. . . .

The conduct of the hearing shall be governed by the standard rules of the American Arbitration Association. . . .

. . . In the event of a disciplinary appeal, the Arbitrator shall determine whether there was a factual basis for the imposition of the discipline

---

[9] We note that there is no section 19.8.

11

and, if applicable, whether there was just cause for the disciplinary action. . . .

Analysis

This Court has previously examined the law generally governing the appointment of deputy sheriffs. *See Williams v. Bagley*, 875 S.W.2d 808 (Tex. App.—Beaumont 1994, no writ). In *Williams v. Bagley*, several former Montgomery County deputies sued Williams, the new Sheriff elect, and Montgomery County after the new Sheriff notified the deputies that he would not be rehiring them on January 1, 1993, when he took office. *Id.* at 809-10. The deputies had served under the former Sheriff who chose not to run for reelection. *Id.* at 809. The deputies obtained a temporary restraining order. *Id.* According to this Court "[u]nder recognized authorities, the appellees' employment expired lawfully when the previous sheriff's term expired." *Id.* at 810. Williams was sworn in on January 1, 1993. *Id.* Williams swore in the deputies and the staff that he hired, and he did not rehire the appellees. *Id.* The Court stated, "Williams had not terminated the appellees' employment." *Id.* This Court went on to explain why the employees had no claim against the County or the Sheriff, and summarized the law as follows,

> Elected county officials in the State of Texas undoubtedly and indisputably possess a broad discretion in the selection of their staff and their employees. *See and compare Barrett v. Thomas*, 649 F.2d 1193 (5th Cir. 1981), *cert. denied*, 456 U.S. 925, 102 S. Ct. 1969, 72 L. Ed. 2d 440 (1982). The established law in Texas as well as the firmly followed custom acknowledges that the deputy sheriffs will serve at the will or the pleasure of the sheriff. The

12

elected sheriff may fire them. A newly elected sheriff is not under a duty to rehire deputies.

. . . .

TEX. LOC. GOV'T CODE ANN. § 85.003 (Vernon 1988) entitled "Deputies" clearly and plainly provides in its subsection (c): "[a] deputy sheriff serves at the pleasure of the sheriff." We squarely hold that if a deputy serves at the pleasure of the sheriff, then the hiring or the rehiring of a deputy sheriff is at the pleasure of the sheriff. The rule of law in our state is that deputies have no protected property interest in their employment. Therefore, there exists no deprivation of constitutional due process in connection with their suspension. *Senegal v. Jefferson County*, 785 F. Supp. 86 (E.D. Tex. 1992), *aff'd* 1 F.3d 1238 (5th Cir. 1993). Furthermore, a deputy sheriff's term expires when the sheriff's term expires. *Samaniego v. Arguelles*, 737 S.W.2d 88 (Tex. App.—El Paso 1987, no writ). Furthermore, the sheriff has the power to terminate the deputy at will. *Id.*

The sheriff is elected to protect and serve the public and to discharge the numerous duties and functions of his office. The sheriff has responsibilities imposed upon him by law. To assist the sheriff in implementing his responsibilities and discharging efficiently and effectively the many duties and responsibilities of his office, deputy sheriffs serve at the pleasure of the sheriff. The settled rule is that the sheriff can terminate the deputy's tenure at will.

*Id.* at 811-12; *see also Cty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 & n.7 (Tex. 2007) (citing *Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.—Austin 1997, pet. denied); *El Paso Cty. Sheriff's Deputies' Ass'n v. Samaniego*, 802 S.W.2d 727, 728 (Tex. App.—El Paso 1990, writ denied)).

So, it is well-settled that a deputy sheriff serves at the pleasure of the sheriff,[10] and we have previously stated that "a deputy sheriff's term expires when the sheriff's term expires." *Williams*, 875 S.W.2d at 812. Furthermore, generally the sheriff has the power to terminate the deputy's employment at will. *Id.*

That said, here, unlike the facts in *Williams*, Sheriff Merritt retired, and his term of office did not expire by operation of time. And unlike *Williams*, Sheriff-Elect Mooney was appointed to fill the remaining six months of Merritt's term. Upon taking office, Sheriff Mooney decided not to keep certain deputies and to promote or hire others. Further, in the case now before us the parties have a CBA.[11]

---

[10] *See* Tex. Loc. Gov't Code Ann. § 85.003. Section 85.003 provides, in relevant part:

Sec. 85.003. Deputies.

. . . .

(c) Except as provided by Subsection (f), a deputy serves at the pleasure of the sheriff. The sheriff may revoke the appointment of a deputy on the indictment of the deputy for a felony.

. . . .

(f) A deputy who is included in the coverage of a civil service system created under Chapter 158 may be suspended or removed only for a violation of a civil service rule adopted under that system.

Tex. Loc. Gov't Code Ann. § 85.003.

[11] Generally, Texas public employees are prohibited from collectively bargaining with their public employers. Tex. Gov't Code Ann. § 617.002. The Fire and Police Employee Relations Act (FPERA), Texas Local Government Code Chapter 174, creates an exception to the general rule, and expressly allows collective bargaining by fire fighters and police officers in political subdivisions in which voters have approved collective bargaining. *See* Tex. Loc. Gov't Code Ann. §§ 174.023, 174.051. A FPERA collective bargaining agreement requiring the arbitration of grievances "is binding and enforceable against a public employer, an association, and a fire fighter or police officer covered by the agreement." *Id.*

14

Appellants contend Sheriff Mooney's decisions regarding the former Deputies are governed and controlled by the CBA. Appellants argue the Sheriff's decisions fall within the definition of a "disciplinary action" expressly addressed in the CBA and would be subject to the grievance procedures in the agreement, which include the right to arbitration. In contrast, Appellee argues Sheriff Mooney's decisions are not controlled by the CBA, his decisions were not "disciplinary actions" as defined in the CBA, and the Appellants are not entitled to invoke the arbitration provision.

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists and (2) the claims at issue are within the scope of the agreement. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *In re Igloo Prods. Corp.*, 238 S.W.3d 574, 577 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]). Where an agreement is unambiguous, the court will give effect to the intention of the parties as expressed in the writing. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).

---

§ 174.109. The definition of a "police officer" includes deputy sheriffs. *See Comm'rs' Court of El Paso Cty. v. El Paso Cty. Sheriff's Deputies Ass'n*, 620 S.W.2d 900, 902 (Tex. App.—El Paso 1981, writ ref'd n.r.e.); *see also* Tex. Loc. Gov't Code Ann. § 174.003(3). No party has claimed in the appeal that the FPERA has not been adopted by the County's governing body in accordance with the terms of FPERA. *See* Tex. Loc. Gov't Code Ann. §§ 174.051-.052.

Here, the parties do not challenge the validity of the CBA or the arbitration provision in the CBA. And none of the parties contend that the CBA is ambiguous.[12] The only disputed issue between the parties is whether the claims at issue are governed by the CBA.

A grievance "is arbitrable 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Port Arthur Police Ass'n v. City of Port Arthur*, No. 09-09-00242-CV, 2010 Tex. App. LEXIS 4124, at *5 (Tex. App.—Beaumont May 27, 2010, no pet.) (mem. op.) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)); *see also Orange Ass'n of Fire Fighters v. City of Orange*, No. 14-13-00061-CV, 2014 Tex. App. LEXIS 2575, at *7 (Tex. App.—Houston [14th Dist.] March 6, 2014, no pet.) (mem. op.) ("Any doubts as to whether the Association's grievance against the [employer] falls within the scope of the grievance procedures of the Agreement must be resolved in favor of arbitration.").

On appeal, Appellants argue that the trial court erred in granting the County's traditional Motion for Summary Judgment because the County was bound by contract to arbitrate the disputes. According to Appellants, summary judgment was improper because an agreement to arbitrate the issues in question existed between

---

[12] Even if the parties disagree on the meaning of the contract, a disagreement about an agreement's meaning is not sufficient to make the contract ambiguous. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

16

the parties and the County is bound to arbitrate the dispute under the CBA because the "failure to rehire" language in the CBA "encompassed this exact scenario[.]" Appellants also contend that the County's argument that the former Deputies' terms expired upon Sheriff Merritt's retirement is unsupported by the Constitution.

The County argues that the trial court properly granted the County's Motion for Summary Judgment because, as a matter of law, the CBA does not govern the former Deputies' grievances and it does not require arbitration. According to the County, the former Deputies' terms ended upon Sheriff Merritt's retirement. The County also argues that Sheriff Mooney was not required to appoint the former Deputies because sheriffs have the constitutional and statutory authority to appoint or deputize deputies of their own choosing at the commencement of their administration. The County argues that the CBA does not abrogate or change that right because Sheriff Mooney's nonappointment of the former Deputies was not a "disciplinary action" as defined by the CBA. The County further contends that Sheriff Mooney did not "terminate" the former Deputies nor "fail to rehire" them, because he never appointed or hired them to begin with.

Section 3.1(O) of Article III (Definitions) of the CBA in this case defines the term "Disciplinary Action" to include "suspensions without pay, demotions, terminations, promotional pass overs, failure to rehire or any other punitive action which results in a loss of pay." Section 20.01 of Article XX (Grievances) of the CBA

17

defines a "grievance" as "a disagreement between the parties regarding the interpretation, application or alleged violation of a provision of this agreement, or the appeal of a 'disciplinary action.'"

The County argues the CBA did not abrogate or change the right of Sheriff Mooney by constitution and statute "to appoint or deputize deputies" of his own choosing at the commencement of his administration. The County contends that Sheriff Mooney did not "terminate" the former Deputies nor "fail to rehire" them, because he never appointed or hired them to begin with. Both Appellants and Appellee cite to *El Paso County Sheriff's Deputies' Ass'n v. Samaniego* in support of their respective positions. *See* 802 S.W.2d 727. In *Samaniego*, three deputy sheriffs were not "redeputized" at the beginning of the newly elected sheriff's term. *Id.* at 728. The El Paso Sheriff's Deputies' Association filed suit to compel Sheriff Samaniego to submit the matter to arbitration pursuant to a collective bargaining agreement between the deputies' association and sheriff. *Id.* In a bench trial, the trial court denied the requested relief and rendered a take nothing judgment in favor of the sheriff. *Id.* The El Paso County Sheriff's Deputies' Association appealed. *Id.* The collective bargaining agreement provided grievance procedures in case of termination of a deputy by the sheriff, and neither party argued that the language of the contract was ambiguous. *Id.* The agreement provided grievance procedures for

18

terminations and also for "demotions, reprimands and suspensions[,]" all of which were included under the provision entitled "Discipline." *Id.*

On appeal, the El Paso Court of Appeals recognized the sheriff's power under section 85.003 of the Government Code and noted that the statute has been interpreted to mean that a sheriff can terminate a deputy's tenure at will. *Id.* (citing Tex. Gov't Code Ann. § 85.003; *Murray v. Harris*, 112 S.W.2d 1091 (Tex. App.—Amarillo 1938, writ dism'd)). However, the Court concluded that the statutory right to terminate was abrogated by the parties' collective bargaining agreement. *See id.* The El Paso Court of Appeals also concluded that a deputy sheriff's term expires when the sheriff's term expires. *Id.* (citing *Cty. of El Paso v. Hill*, 754 S.W.2d 267 (Tex. App.—El Paso 1988, writ denied); *Samaniego*, 737 S.W.2d 88; *Tarrant Cty. v. Smith*, 81 S.W.2d 537 (Tex. App.—Fort Worth 1935, writ ref'd); *Trinkle v. State*, 127 S.W. 1060 (Tex. Crim. App. 1910)). The El Paso Court of Appeals explained that the word "expire" "connotes the coming to a conclusion or end or to have run its course." *Id.* The El Paso Court of Appeals construed the word "terminate[,]" however, to carry "a more abrupt inference[]" that "suggests positive interference[,]" and the Court explained that "[t]he expiration of a term is brought about by the passing of time alone without any action on the part of the sheriff." *Id.* at 728-29. The El Paso Court of Appeals determined that (1) the collective bargaining agreement did not contain language referring to the expiration of term; (2) the

19

reference to termination was in context with demotions, reprimands and suspensions under the section entitled "Discipline[;]" (3) there were no words in the collective bargaining agreement that expressly referred to the reappointment of a deputy; and (4) despite the association's argument otherwise, the primary purpose of the collective bargaining agreement as stated in the agreement's preamble (the efficient and uninterrupted performance of the county law enforcement) was not frustrated by the sheriff's failure to re-deputize the deputies. *Id.* In affirming the trial court, the El Paso Court of Appeals concluded that there was "no intention expressed from the four corners of the entire contract in any manner to govern a sheriff's appointment of deputies to a new term of office[]" and that the Court could not "by implication import something into a written instrument merely because it might seem that the agreement may appear to operate unjustly." *Id.* at 729.

Appellants argue that *El Paso County Sheriff's Deputies' Ass'n v. Samaniego* supports their contention that the statutory right of a sheriff to terminate deputies can be abrogated by a collective bargaining agreement, and further that the collective bargaining agreement in the present case, unlike the agreement in *El Paso County Sheriff's Deputies' Ass'n v. Samaniego*, expressly includes "failure to rehire" as a disciplinary action within the four corners of the contract.

In contrast, the Appellee argues that *El Paso County Sheriff's Deputies' Ass'n v. Samaniego* "is factually identical to the matter here[]" and "makes [] clear" that

20

Texas courts have recognized that a newly elected sheriff's decision to appoint or not to appoint a prior sheriff's deputy is not a "disciplinary action," nor a "failure to rehire," nor any other punitive action, and, therefore, it is not an adverse employment action typically subject to a collective bargaining agreement. Appellee also contends that here, "just as in *Samaniego*," the former Deputies "were not terminated; rather, their appointment term[] merely expired when Sheriff Merritt's term ended [with the exception of Dempsey, who retired before her appointment term expired]." Citing to *Samaniego*, Appellee argues that "[t]he expiration of the [former Deputies'] appointments was not caused by any disciplinary or punitive actions from Sheriff Mooney, but by the former Sheriff's retirement (*i.e.* a passage of time)."

Here, the definition of "disciplinary action" in the CBA is different than the language in *Samaniego*. Section 3.1(O) of Article III (Definitions) of the CBA in this case defines the term "Disciplinary Action" in the agreement to include "suspensions without pay, demotions, terminations, promotional pass overs, *failure to rehire* or any other punitive action which results in a loss of pay." Section 20.01 of Article XX (Grievances) of the CBA defines a "grievance" as "a disagreement between the parties regarding the interpretation, application or alleged violation of a provision of this agreement, or the appeal of a 'disciplinary action.'"

The CBA at issue in *Samaniego* did not include "failure to rehire" language within the section of the agreement addressing disciplinary actions and it did not

21

include a definition for a "disciplinary action." Here, the arbitration clause of the CBA provides that "[i]n the event of a disciplinary appeal, the Arbitrator shall determine whether there was a factual basis for the imposition of the discipline and, if applicable, whether there was just cause for the disciplinary action." The CBA's definition of "disciplinary action" includes the "failure to rehire or any other punitive action which results in a loss of pay."

Sheriff Elect Mooney did not originally hire any of the deputies in question, but he did decide that the deputies would not continue to serve as deputies once Sheriff Elect Mooney was appointed to fill the remainder of Sherriff Merritt's unexpired term. The deputies and the Association contend that the decision of Sheriff Mooney was a "disciplinary action" as defined under the CBA because that decision was a "failure to rehire."

Whether parties have agreed to arbitrate a dispute is a "gateway matter ordinarily committed to the trial court[,]" but parties can "agree to arbitrate arbitrability." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018); *see also RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) ("[A] contractual agreement to submit the arbitrability question to an arbitrator is valid and must be treated like any other arbitral agreement."). "A presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration."

22

*Jody James Farms, JV*, 547 S.W.3d at 631. Threshold questions of arbitrability that are typically ruled upon by trial courts—but may be contractually delegated to the arbitrator—include the validity and enforceability of the arbitration agreement and whether a claim or dispute is encompassed within the agreement. *See Rent-A-Center Tex., L.P. v. Bell*, No. 09-16-00085-CV, 2016 Tex. App. LEXIS 9358, at **12-13 (Tex. App.—Beaumont Aug. 25, 2016, no pet.) (mem. op.) (citing *Schlumberger Tech. Corp. v. Baker Hughes, Inc.*, 355 SW.3d 791, 802-03 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied); *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.—Forth Worth 2009, pet. denied)); *see also Berry Y&V Fabricators, LLC v. Bambace*, 604 S.W.3d 482, 486 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (parties "may delegate to the arbitrator questions concerning validity or enforceability of an arbitration agreement, and we enforce such clauses when the delegation is clear and unmistakable[]"). Because arbitration is a matter of contract, "that which the parties agree must be arbitrated shall be arbitrated." *Jody James Farms, JV*, 547 S.W.3d at 631. Arbitration clauses providing that the arbitrator will decide gateway questions such as arbitrability of the dispute "are an established feature of arbitration law." *RSL Funding, LLC*, 569 S.W.3d at 120; *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 677 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (stating that if agreement includes delegation clause, trial court must compel

23

arbitration so arbitrator may decide gateway issues parties have agreed to arbitrate).[13] If the agreement clearly and unmistakably demonstrates that the parties intended to confer on the arbitrator the power to determine what disputes are arbitrable, the trial court lacks the power to decide that issue. *Oxbow Calcining LLC v. Port Arthur Steam Energy, L.P.*, Nos. 09-18-00359-CV & 09-18-00392-CV, 2018 Tex. App. LEXIS 10271, at \*\*25-26 (Tex. App.—Beaumont Dec. 13, 2018, no pet.) (mem. op.) (citing *T.W. Odom Mgmt. Servs., Ltd. v. Williford*, No. 09-16-00095, 2016 Tex. App. LEXIS 9353, at \*7 (Tex. App.—Beaumont Aug. 25, 2016, no pet.) (mem. op.)). "Thus, when an arbitration agreement clearly and unmistakably demonstrates the parties' intent to confer on the arbitrator the power to determine substantive arbitrability, questions regarding gateway issues that are normally decided by the court will be submitted to the arbitrator." *Bell*, 2016 Tex. App. LEXIS 9358, at \*10 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)); *Oxbow Calcining LLC*, 2018 Tex. App. LEXIS 10271, at \*\*25-29.

---

[13] Parties may contractually provide that the arbitrator will resolve questions of arbitrability by using "express language" in the contract. *Darling Homes of Tex., LLC v. Khoury*, No. 01-20-00395-CV, 2021 Tex. App. LEXIS 3756, at \*21 (Tex. App.—Houston [1st Dist.] May 13, 2021, no pet.) (mem. op.). Parties may also delegate questions of arbitrability by "expressly adopting rules" that unmistakably delegate such issues to the arbitrator. *Id.*; *Weitzel v. Coon*, No. 01-19-00015-CV, 2019 Tex. App. LEXIS 6495, at \*6 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) ("The express incorporation of rules that empower the arbitrator to determine arbitrability[]" is evidence of "the parties' intent to allow the arbitrator to decide such issues."); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (same).

One method by which parties can contractually provide that the arbitrator will resolve the questions of arbitrability is by adopting rules that provide and empower the arbitrator to determine arbitrability. *See Weitzel v. Coon*, No. 01-19-00015-CV, 2019 Tex. App. LEXIS 6495, at *6 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.). "The express incorporation of rules that empower the arbitrator to determine arbitrability, such as the AAA Commercial Arbitration Rules, is clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues." *Id.*; *see also Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 Tex. App. LEXIS 1542, at **7-8 (Tex. App.—Fort Worth Feb. 23, 2017, pet. denied) (mem. op.) (concluding arbitrator properly determined arbitrability because policy incorporated AAA's commercial arbitration rules); *Schlumberger Tech. Corp.*, 355 S.W.3d at 802 ("There are no provisions in the Resolution or Procedure Agreements that negate the arbitrators' power under AAA Rule 7(a) to determine the arbitrability of a defense raised in arbitration. Thus we conclude that this issue of contract interpretation was a question for the AAA panel, not the trial court and not this court."); *Rio Grande Xarin II, Ltd. v. Wolverine Robstown, L.P.*, Nos. 13-10-00115-CV & 13-10-00116-CV, 2010 Tex. App. LEXIS 5189, at **21-23 (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd) (mem. op.) (arbitration clause in earnest money contract stating that arbitration would be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" clearly and

25

unmistakably showed intent that arbitrator determine arbitrability); *Saxa*, 312 S.W.3d at 229-31 (broad arbitration clause that specifically incorporated AAA rules served as clear and unmistakable evidence of parties' intent to delegate question of arbitrability to arbitrator); *Burlington Res. Oil & Gas Co., LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 40-41 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("We are also mindful that, in certain circumstances, the incorporation of AAA rules may constitute clear and unmistakable evidence of an intent to allow an arbitrator to decide issues of arbitrability."); *Haddock*, 287 S.W.3d at 172 ("The majority of courts have concluded that express incorporation of rules empowering the arbitrator to decide arbitrability (including ruling upon his or her own jurisdiction) clearly and unmistakably evidences the parties' intent to delegate issues of arbitrability to the arbitrator.").

Here, the express language within the CBA in sections 20.02 and 20.03 states "[t]he parties shall arbitrate consistent with the rules and procedures established by the American Arbitration Association[,]" and "[t]he conduct of the hearing shall be governed by the standard rules of the American Arbitration Association." The American Arbitration Association [AAA] Labor Arbitration Rules provide "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever, in a collective bargaining agreement or submission, they have provided

26

for arbitration by the American Arbitration Association . . . or under its rules."[14] Under the AAA Labor Arbitration Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."[15] The parties' adoption of the AAA rules in the CBA is "clear and unmistakable evidence" that they intended to allow the arbitrator to decide whether the grievances are governed by the CBA. *See Weitzel*, 2019 Tex. App. LEXIS 6495, at *6; *Oxbow Calcining LLC*, 2018 Tex. App. LEXIS 10271, at **25-29; *Schlumberger Tech. Corp.*, 355 S.W.3d at 802. So, the arbitrator should decide if Sheriff Mooney's decisions are governed by the CBA as "disciplinary actions." *See id.* We conclude that the matter should be submitted to arbitration. *Port Arthur Police Ass'n*, 2010 Tex. App. LEXIS 4124, at *5 (citing *Steelworkers*, 363 U.S. at 582-83); *see also Orange Ass'n of Fire Fighters*, 2014 Tex. App. LEXIS 2575, at *7. On the record before us, an arbitrator may or may not conclude that the failure to appoint or keep the former Deputies and the offer of a different position to Dempsey were "disciplinary actions" covered by the CBA or that the promotions of other deputies to fill those positions were or were not

---

[14] American Arbitration Association, *Labor Arbitration Rules* ¶1 (rules amended and accepted July 1, 2013), *available at* https://www.adr.org/sites/default/files/Labor_Arbitration_Rules_3.pdf.

[15] *See id.* at ¶3(a).

governed by the CBA. *See Orange Ass'n of Fire Fighters*, 2014 Tex. App. LEXIS 2575, at **7-8.

We conclude this matter should be resolved through the arbitration process pursuant to the arbitration agreement.[16] Accordingly, the County is not entitled to judgment as a matter of law. We sustain issue one. We reverse the trial court's summary judgment in favor of the County and remand the cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

                                                  _____

                                                       LEANNE JOHNSON
                                                           Justice

Submitted on July 26, 2022
Opinion Delivered March 9, 2023

Before Horton, Johnson and Wright, JJ.

---

[16] Because we conclude the alleged grievances should be resolved through the arbitration process, we do not address the merits of the parties' other arguments. Rather, the County and the Appellants will have the opportunity to make arguments to the arbitrator who will decide whether Sheriff Mooney's decisions were "disciplinary action[s]" under the CBA. *See* Tex. R. App. P. 47.1.